**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DIVISION OF TENNESSEE**

| | | | |
|---|---|---|---|
| **BALL HOMES, LLC,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | **:** | No. _____ | |
| | ) | | |
| | ) | | |
| **GEOSERVICES, LLC,** | ) | **Jury Demand** | |
| | ) | | |
| **Defendant.** | ) | | |

## COMPLAINT

Plaintiff Ball Homes, LLC, through counsel, asserts claims against Defendant GEOServices, LLC, for damages arising and resulting from slope failures at a real estate development on Northshore Drive in Knoxville called Cambridge Shores. Ball Homes is the developer for Cambridge Shores. GEOServices was the geotechnical or soil engineer that Ball Homes engaged for the development.

### The Parties

1. Plaintiff Ball Homes, LLC ("Ball Homes") is a Kentucky limited liability company based in Lexington, Kentucky. All its members are citizens of Kentucky, which means that it is a citizen of Kentucky. It has been building homes throughout Kentucky for more than 50 years. Since 2011, it has also developed neighborhoods and built homes in Knoxville and Maryville, Tennessee.

2. Defendant GEOServices, LLC ("GEOS") is a Tennessee limited liability company with its principal place of business at 2561 Willow Point Way, Knoxville, Tennessee 37931. On information and belief, its member or members are citizens of Florida, which means that it is a

1

citizen of Florida.  GEOS may be served through its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs, because, among other reasons, the damages caused from the slope failures at issue exceed $780,000.

4.      The Eastern District of Tennessee is a proper venue for this action because it is the judicial district in which a substantial part of the events giving rise to this suit occurred.

## Facts

### GEOS' Professional Services Agreement with Ball Homes

5.      Ball Homes is the real estate developer for a residential subdivision off Northshore Drive, in Knoxville, Tennessee, called Cambridge Shores.

6.      Ball Homes hired GEOS to be the geotechnical engineer or earth-works expert for the development of Cambridge Shores.  In that role, GEOS was responsible for, among other things, ensuring that the slopes of the development were graded or cut according to the design plan.  As the geotechnical or earth-works expert, GEOS also had an obligation to recommend appropriate remediation or repair when slopes were not cut according to the design plan, and a continuing duty throughout its engagement on the project to advise on soil risks.

7.      Ball Homes and GEOS signed a written "master professional services agreement" regarding GEOS' work for the Cambridge Shores development (and other projects) (the "Professional Services Agreement").  A true copy of this agreement is attached as **Exhibit A**. Under the Professional Services Agreement, GEOS is obligated to fully indemnify Ball Homes for

2

all losses or costs sustained or resulting from "any act or omission" of GEOS and its employees or agents. *See* Professional Services Agreement ¶ 10. The indemnification obligations include all losses or damages "arising or resulting from" any "negligence on the part of, or default under or breach of this agreement by [the provider] or its employees, agents or subcontractors." *Id.* They also include "damage to or destruction of property of any kind arising out of or resulting from *any* act or omission, or alleged act or omission, of [the provider], its employees, agents or subcontractors." *Id.* (emphasis added). In other words, the indemnification provision includes distinct, alternative obligations, including one that is for acts and omissions that were negligent or deficient, and one that is for acts and omission that were not negligent or deficient in any way but that still resulted in property damage. In this case, Ball Homes is alternatively asserting each of the indemnification obligations in the Professional Services Agreement against GEOS.

**The Over-Excavation at Cambridge Shores**

8. During grading of the Cambridge Shores development, the grading contractor cut certain slopes in the development to inclinations steeper than the design slope, which was 2:1. The contractor cut the slopes to sheer, contrary to the approved grading plans for the development.

9. GEOS was monitoring the grading the day the sheer cuts were made. Generally, if a grading contractor is cutting in one place, it is using the dirt that is cut to fill a different location in the development. GEOS saw or should have seen the cuts, and GEOS knew or should have known where the dirt that was cut ended up. Given the size of the subdivision, it is implausible that a GEOS engineer or technician on site could have been doing testing on any portion of the project on the day the cuts were made, or soon thereafter, and not seen the cuts.

10. The GEOS technician or engineer on site either failed to observe the over-excavation or failed to stop it.

3

11.     The over-excavation was discovered by Ball Homes within a few days of when the cuts were made.  The local project manager for Ball Homes, Ryan Hickey, had a series of calls, and one or more meetings, with GEOS and with the grading contractor to find out what happened and what should be done about it.

12.   Within a day of Ball Homes' discovering that sheer cuts had been made, Mr. Hickey met with Ros Kingery, one of GEOS' officers and engineers, at the site.  Ball Homes asked GEOS for a professional recommendation regarding how to repair the sheer cuts.  GEOS recommended that Ball Homes have the grading contractor "backfill" the cuts with soil on the job site.  "Backfilling" is packing soil from the site on the cut areas.  Ball Homes relied on that recommendation, and the sheer-cut slopes were repaired by backfilling.

13.     Backfilling, however, was not reasonable or adequate remediation.  Backfilling made the slopes vulnerable to movement, which is what happened after heavy rainfall in February 2019 (discussed further below).

14.     In the alternative to paragraph 13, Ball Homes alleges that even if backfilling was adequate, it made the slopes vulnerable to movement, triggering GEOS' indemnification obligations.

15.     In the alternative to paragraph 12, Ball Homes alleges that, even if GEOS did not recommend backfilling, GEOS should have advised against backfilling.  Throughout its assignment, although GEOS knew that the cut slopes had been backfilled, GEOS never advised Ball Homes that the backfilled slopes were unstable or presented instability risks.  Not advising against backfilling or concerning the risks it presented either was negligent or, even if not negligent, was an act or omission that made the slopes vulnerable to movement, causing or

4

contributing to the slope failures that occurred and thus triggering GEOS' indemnification obligation.

16. The initial over-excavation was done under the monitoring and supervision of GEOS. And the backfilling was done at the recommendation or with the acquiescence and tacit approval of GEOS, which, again, was the geotechnical or soil engineer for the development.

17. Other remediation alternatives were available when the cuts were made. At that time, Ball Homes could have put in a rock wall that would have been much cheaper than soil nailing. A rock wall would have worked at the time because the lots had not been sold and customers weren't living there. But by February 2019 (when the slope failures at issue occurred), most of the lots were sold and customers were living on them. Those customers had purchased property with a backyard that looked a certain way. Soil nailing allowed Ball Homes to put the yards back together so that they looked the way they looked when the customers purchased them.

18. GEOS' acts and omissions with respect to the sheer cuts and to the repair of the slopes caused Ball Homes' losses and damages to be greater than they otherwise would have been, in part because it would have been less expensive to properly remediate before homes were built and lots were sold to customers.

**The Slope Failures in February 2019**

19. On February 23, 2019, after unusually heavy rain, certain slopes in Cambridge Shores—the slopes that had been over-excavated—failed or collapsed. The failures caused not only damages to the slopes themselves, but also resulting damages, including the destruction of fences and obstruction and invasion of yards. Most of the damage occurred in 11 lots. At the time of the slope failures, nine of those lots were owned by customers; two were still owned by Ball Homes.

5

20.     The collapse presented immediate safety hazards for the neighborhood. Ball Homes acted promptly to stabilize the soil and determine the best plan to remediate the failures.

**Remediation of the Slope Failures**

21.     Ball Homes had to move quickly to address the failed slopes. Once slopes have failed, there can be additional slope or ground failures. Ball Homes needed to make sure there wasn't going to be a mudslide. Ball Homes' prompt action avoided greater damage.

22.     As would be expected, the homeowners in the Cambridge Shores development were quite concerned about the slope failures and what Ball Homes was going to do about them. The homeowners looked to Ball Homes, the developer, to repair the damage.

23.     It was necessary and appropriate for Ball Homes to remediate the slope failures, among other reasons, because the slope failures caused damages to the property of third parties, namely, the customers who had purchased homes in Cambridge Shores. As soon as the slope failures occurred, those customers had claims against Ball Homes.

24.     Ball Homes considered three remediation alternatives: removing the failed soils and constructing mechanically stabilized earth walls; removing the failed soils and installing a rock buttress; or soil nailing. Ball Homes chose soil nailing. The remediation efforts are now largely complete.

**Ball Homes' Losses and Damages**

25.     The slope failures have caused Ball Homes losses and damages, including damage to the lots that were still owned by Ball Homes when the slopes failed, and the costs of the remediation, which Ball Homes has paid out of pocket. The remediation expenses include soil nailing, repairing damaged fences, and grading and excavation.

26.     In remediation costs alone, Ball Homes has spent $786,296.

27.     GEOS has refused to indemnify Ball Homes for the losses and damages arising from the slope failures.  GEOS' refusal has caused Ball Homes to incur additional expense, loss, and injury, including but not limited to attorneys' fees.

**COUNT I: BREACH OF INDEMNIFICATION OBLIGATIONS**

28.     The allegations in ¶¶ 1 through 27 above are incorporated as if fully set forth herein.

29.     Under the Professional Services Agreement, GEOS is obligated to indemnify Ball Homes "from and against" "any and all" "losses" or "damages" incurred or suffered by Ball Homes "for or on account of" GEOS or its employees or agents.  *See* Professional Services Agreement ¶ 10.

30.     Under the Professional Services Agreement, GEOS' indemnification obligations apply "regardless of whether or not" the damages associated with the slope failures were "caused in part by the indemnified parties."  *See* Master Agreements ¶ 10.

31.     Because the slopes at issue were damaged and were not properly and reasonably repaired as a result of "acts or omissions" of GEOS or its agents or employees, GEOS is obligated under the Professional Services Agreement to indemnify Ball Homes for the losses and damages arising from the slope failures.

32.     In the alternative to paragraph 32, even if GEOS' acts and omissions with regard to the over-excavation and backfilling were not unreasonable or deficient, the property damages at issue arose or resulted from those acts or omissions, which means that GEOS is obligated under the Professional Services Agreement to indemnify Ball Homes for those damages.

33.     The losses and damages arising or resulting from GEOS' acts and omissions are at least $786,296.

7

## COUNT II: BREACH OF PROFESSIONAL SERVICES AGREEMENT

34. The allegations in ¶¶ 1 through 33 above are incorporated as if fully set forth herein.

35. GEOS provided geotechnical engineering and consulting services to Ball Homes on the Cambridge Shores development under the Professional Services Agreement.

36. GEOS breached the Professional Services Agreement by, among other things, (i) failing to properly monitor the grading of the development in accordance with the design plan; (ii) recommending a remediation or repair of the sheer cuts that was not adequate and that caused greater losses than Ball Homes would have otherwise incurred; and/or (iii) not advising Ball Homes not to backfill, a remediation or repair of the sheer cuts that caused greater losses than Ball Homes would have otherwise incurred.

37. Ball Homes has complied with its obligations under the Professional Services Agreement.

38. As a direct, proximate, and foreseeable result of GEOS' breaches of the Professional Services Agreement, Ball Homes has suffered losses and damages, including, without limitation, expenses to remediate the slope failures, business interruption, and lost profits.

## COUNT III: NEGLIENCE

39. The allegations in ¶¶ 1 through 38 above are incorporated as though fully set forth herein.

40. The geotechnical engineering services performed by GEOS on the Cambridge Shores development were negligent, fell below acceptable standards of care, and breached the duties that GEOS owed to Ball Homes.

41.     As a direct, proximate, and foreseeable result of GEOS' negligence, Ball Homes has suffered losses and damages, including, without limitation, expenses to remediate the slope failures and business interruption.

## COUNT IV: BREACH OF IMPLIED WARRANTY

42.     The allegations in ¶¶ 1 through 41 above are incorporated as though fully set forth herein.

43.     GEOS held itself out to Ball Homes as having expertise in geotechnical engineering.

44.     Ball Homes reasonably relied on GEOS's representations of expertise.

45.     GEOS impliedly warranted to Ball Homes that its services would be performed in a proper and workmanlike manner.

46.     GEOS breached its implied warranty by failing to perform its services on the Cambridge Shores development in a proper and workmanlike manner.

47.     As a direct, proximate, and foreseeable result of GEOS' breaches of implied warranty, Ball Homes has suffered losses and damages, including, without limitation, expenses to remediate the slope failures and business interruption.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Ball Homes prays the Court as follows:

A.      that judgment be entered awarding Ball Homes compensatory damages of at least $786,296, plus pre- and post-judgment interest;

9

B.      that judgment be entered awarding Ball Homes its reasonable attorneys' fees and costs under the terms of the Professional Services Agreement and in accordance with applicable law;

C.      that the costs of this action be taxed to the Defendant;

D.      that a jury be empaneled to hear this case; and

E.      that Ball Homes be granted any and all further legal or equitable relief to which it may be entitled.

Respectfully submitted February 18, 2022.

By:     s/James R. Stovall
        JAMES R. STOVALL, BPR # 032512
        **RITCHIE, DAVIES, JOHNSON**
        **& STOVALL, P.C.**
        606 W. Main Street, Suite 300
        Knoxville, TN 37902
        Phone: (865) 637-0661
        Fax:    (865) 524-4623
        email: jstovall@rdjs.law
        *Attorney for Plaintiff*